**SO ORDERED.**

**SIGNED this 14 day of December, 2007.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| RONALD EDWARD HENDERSON, JR., | ) | Case No. 05-42351 |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| **In re:** | ) | |
| | ) | |
| MICHAEL FRANCIS SHERLOCK and | ) | Case No. 06-40549 |
| TAMMI RAE SHERLOCK, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Debtor, Henderson's Motion for Determination that the Portion of Debtor's Income Tax Refund Offset by the U.S. Department of Treasury is Not

Property of the Estate[1] and on the Motion by Debtors Sherlock for Determination that the Portion of Debtors' Income Tax Refund Offset by the IRS is Not Property of the Estate.[2] In both of these cases, the Chapter 7 Trustee has demanded turnover of pre-petition tax refunds that were offset by the federal government for either prior tax debts or past due child support. The Trustee argues that the estate is entitled to the application of the equitable doctrine of marshaling and that the Debtors' creditors should not bear the entire burden of the set offs. In response, the Debtors have filed these motions, seeking a determination that the Chapter 7 Trustee cannot compel turnover,[3] arguing that the doctrine of marshaling is inapplicable. These are contested matters over which this Court has jurisdiction.[4] The parties have stipulated to all relevant facts,[5] and the Court grants both motions.

I. **FINDINGS OF FACT**

Ronald Henderson filed for relief under Chapter 7 of the Bankruptcy Code on July 25, 2005. In April 2006, the Chapter 7 Trustee requested turnover of $2,147.79, which represents that portion of Henderson's 2005 income tax refund attributable to the pre-petition portion of his tax refund, after honoring a $750 attorney fee assignment.[6] In December 2006,

---

[1] Doc. 21 in Case No. 05-42351.

[2] Doc. 44 in Case No. 06-40549.

[3] The tax refunds at issue are actually the portion of the tax refunds that correspond to the pre-petition portion of the tax refunds that Debtors were due to receive post-petition.

[4] 28 U.S.C. § 157(a) and §§ 1334(a) and (b). A motion for an order to turnover property of the estate is a core proceeding, which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(E).

[5] Doc. 33 in Case No. 05-42351 and Doc. 57 in Case No. 06-40549.

[6] The entire tax refund was in the amount of $4,522.00. After subtracting the $750 attorney fee assignment, the Trustee requested just over 56% of the remainder based on the date of the bankruptcy filing.

the U.S. Treasury Department notified Debtor that the entire tax refund (after subtracting the $750.00 assignment) had been applied to child support obligations owed by Debtor to the Texas Attorney General's Office and California Child Support Services. Although Debtor thus received none of the tax refund because the entire amount was offset, the Trustee still requested turnover of the funds, relying on Chief Judge Nugent's *In re Steele*[7] decision as authority that Debtor must nevertheless repay the bankruptcy estate the pro-rata portion of the refund, under the doctrine of marshaling of assets.

Debtors, Michael and Tammi Sherlock, filed for relief under Chapter 7 of the Bankruptcy Code on June 23, 2006. In early March 2007, the Chapter 7 Trustee requested turnover of $459.07, which represented the pre-petition portion of Debtors' 2006 federal income tax refund. On March 17, 2007, the IRS informed the Sherlocks that it has applied their entire 2006 income tax refund to the unpaid balance of other federal taxes owed by them. Similarly, the Trustee requested turnover of the $459.07, despite the offset by the IRS, again based upon *In re Steele* and the doctrine of marshaling of assets.

On May 8, 2007, Judge Somers issued an opinion in *In re Blagg*,[8] which disagreed with the holding in *In re Steele*, and declined to apply the doctrine of marshaling to facts similar to those in the two cases currently before this Court. The Court must now decide whether to adopt the holding of *In re Steele* or *In re Blagg*, or whether a different approach should be taken in these cases.

---

[7]Case No. 03-13393; Adv. No. 04-5265 (Bankr. D. Kan. Nov. 17, 2005).

[8]372 B.R. 502 (Bankr. D. Kan. 2007).

## II. CONCLUSIONS OF LAW

In *In re Steele*, the Court analyzed the equitable doctrine of marshaling, noting that the trustee must demonstrate the presence of three required elements to invoke that doctrine: (1) the existence of two creditors with a common debtor; (2) the existence of two funds belonging to the debtor; and (3) the legal right of one creditor to satisfy his demand from either of the funds, while the other may resort to only one fund.[9] The trustee asserted that (1) the debtors had two creditors, the IRS and the Trustee, who stood in the shoes of unsecured creditors; (2) there were two funds belonging to the debtors, the pre-petition refunds and post-petition property; and (3) the IRS could satisfy its claim from either of these funds, since its claim is non-dischargeable, but the Trustee could look only to the pre-petition refund that had been offset.

Based on those arguments, the court invoked the equitable doctrine of marshaling, and held that the debtor was responsible for reimbursing the entire amount of the pre-petition tax refund to the estate. He stated that "[b]ecause he has benefitted from the set off and application of $1,222 of his tax refund to a debt that could have been collected from him post-discharge, Steele should pay back to the estate the entirety of its share of the refund, $1,604, as though there had been no offset."[10]

---

[9]*Steele*, Adv. No. 04-5265 at 4 (citing *Morris v. Jack B. Muir Irrevocable Trust (In re Muir)*, 89 B.R. 157, 160 (Bankr. D. Kan. 1988)).

[10]*Id.* at 5.

4

The court in *In re Blagg* reached a different conclusion under nearly identical facts. In *Blagg*, the court found that the equitable doctrine of marshaling should not be applied for several reasons. The court held that the first element for marshaling was not present because the creditors involved were not secured creditors, and the doctrine's entire purpose is to benefit junior <u>secured</u> creditors.[11] Second, the court held there were not two separate funds subject to a lien by a senior lien holder, and in fact, there was in reality no perfected lien holder.[12] Third, the court held that the debtors never had the purported "two funds" in their hands, nor did they have control over those funds.[13] Fourth, the court held that 11 U.S.C. § 105 could not be used to invoke marshaling,[14] because applying marshaling to the facts of this case would directly circumvent the Bankruptcy Code's specific provisions[15] that allow a preference for governmental entities (by authorizing offset under certain circumstances). Fifth, the court reasoned that because the debtors never actually had possession of or control over the tax refunds at issue, there is no statutory authority to require them to turnover the

---

[11]*In re Blagg*, 372 B.R. at 508-09 (holding that one of the requirements for the application of the doctrine of marshaling is that the creditors involved be secured creditors) (citing Moses Lachman, *Marshaling Assets in Bankruptcy: Recent Innovations in the Doctrine*, 6 Cardozo L. Rev. 671, 677 (1985)).

[12]Although not relied upon by the court in *In re Blagg*, the Tenth Circuit Bankruptcy Appellate Panel has also recently held that a tax refund cannot be split into "two funds" for the purposes of marshaling by dividing the pre-petition and post-petition portions of the refund. The BAP held that because the pre-petition portion of the refund belongs to the estate, and the post–petition portion belongs to the debtor, there are not "two funds belonging to the debtor" and marshaling is not applicable. *Redmond v. Miller (In re Miller)*, 2007 WL 2332391 (10th Cir. BAP August 16, 2007). The same analysis applies here; because the pre-petition portion of the tax refund belongs to the bankruptcy estate and the post-petition property belongs to Debtors, there are not two funds "belonging to the debtor" required for the doctrine of marshaling to apply.

[13]*In re Blagg*, 372 B.R. at 507 (citing Jacquelyn Michael Davis, Marshaling of Assets in Bankruptcy, 5 Bankr. Dev. J. 309, 309 (1987) and 53 Am. Jur.2d Marshaling Assets § 17 (2007)).

[14]*In re Blagg*, 372 B.R. at 509, n.33 (citing 2 Collier on Bankruptcy ¶ 105.01[2]).

[15]*See, e.g.,* 11 U.S.C. § 553.

funds.[16] Finally, the court concluded that applying the "equitable" doctrine of marshaling in these cases would be inequitable because it would place an improper burden upon the debtors to collect and forward assets of the estate to the Trustee, impeding the debtor's fresh start. In so holding, the court noted that marshaling is generally not applied against the debtor or to the prejudice of the debtor.[17]

The Court finds that the approach taken in *In re Blagg* more persuasive, and hereby adopts the holding of *In re Blagg*. Based on that decision, the Court finds that the doctrine of marshaling is not applicable, and the Trustee may not collect the pre-petition portion of Debtors' income tax refunds that were offset by the federal government from the respective Debtors.[18]

## III. CONCLUSION

---

[16]*Id.* at 510.

[17]*Id.* at 510-11.

[18]The Trustee also argues in *In re Henderson*, Case No. 05-42351, that the offset by the U.S. Department of Treasury on behalf of child support creditors was improper because that agency used *pre*-petition funds belonging to the bankruptcy estate to offset *post*-petition child support arrearages. On this point, this Court also agrees with *In re Blagg* in finding that "the **Trustee** should seek to recover from the IRS in the first instance" if the offset was improper. It is not Debtors' duty to recover an improper offset for the estate. *In re Blagg*, 372 B.R. at 511 (emphasis added). The Court does not decide whether the offset was proper or not. It only decides that once a refund is offset, that tax refund is no longer property of the estate. *Cf. Jones v. Internal Revenue Service (In re Jones)*, 359 B.R. 837 (Bankr. M.D. Ga. 2006) (adopting emerging view that federal tax overpayments are not property of the estate until the IRS has effectuated any offset to which it is entitled). In addition, the Trustee has argued that in at least one of the cases, the offset was a violation of the automatic stay imposed by 11 U.S.C. § 362. Again, if the Trustee believes either or both offset were improper because there was a violation of the automatic stay, or for any other reason, the Trustee should bring an action against the offending governmental agency. The motions currently before the Court are Debtors' motions to determine that once the funds were offset, they were no longer responsible for paying those funds into the bankruptcy estate. As far as the Court is aware, the facts relative to allegedly improper offsets have not been fully developed, and the United States is not a party to this dispute nor has it been given the opportunity to brief the offset issue, so the Court declines to decide the underlying propriety of the offsets in this opinion.

For the foregoing reasons, the Court hereby adopts the holding of *In re Blagg* and finds that the portion of the respective Debtors' income tax refunds that were offset by the IRS and the U.S. Department of Treasury are not property of the respective bankruptcy estates. For that reason, Debtors will not be required to repay the offset amounts to the estate.

**IT IS, THEREFORE, BY THE COURT ORDERED** that the Motion for Determination that the Portion of Debtor's Income Tax Refund Offset by the U.S. Department of Treasury is Not Property of the Estate[19] and the Motion for Determination that the Portion of Debtors' Income Tax Refund Offset by the IRS is Not Property of the Estate[20] are both granted.

###

---

[19] Doc. 21 in Case No. 05-42351.

[20] Doc. 44 in Case No. 06-40549,